UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GREGORY C.,

               Plaintiff,

      v.                                                  **DECISION AND ORDER**
                                                                                  19-CV-1040S

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

       1.       Plaintiff Gregory C.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

       2.       Plaintiff protectively filed his application for benefits with the Social Security Administration on January 25, 2016. (R.[2] at 353.) Plaintiff alleged disability beginning on November 10, 2013, due to "pain in leg, wrist, lower back; severe chronic PTSD, problems with right arm; blood pressure, [and] gall bladder removed." (R. at 356-57.) Plaintiff's application was denied. Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). ALJ Roxanne Fuller held a hearing on March 22, 2018, at which

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify plaintiff by his first name and last initial.

[2] Citations to the underlying administrative record are designated as "R."

Plaintiff, represented by his attorney, appeared and testified. (R. at 321-55.) Vocational Expert Lisa Atkinson also appeared and testified by telephone. At the time of the hearing, Plaintiff was 45 years old, with high-school equivalent education, and prior work experience in maintenance, sales, and landscaping. (R. at 353, 369.)

3. The ALJ considered the case de novo and, on June 27, 2018, issued a written decision denying Plaintiff's application for benefits. (R. at 298-315.) On June 13, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on August 6, 2019, challenging the Commissioner's final decision.[3]

4. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 12, 16.) Plaintiff filed a response on August 12, 2020 (Docket No. 17), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is denied, and Defendant's motion is granted.

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v.

---

[3] The ALJ's June 27, 2018, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10. When there is medical evidence of an applicant's drug or alcohol abuse, the "disability" inquiry does not end with the five-step analysis. Cage v. Comm'r of Soc. Sec.,

4

692 F.3d 118, 123 (2d Cir. 2012) (citing 20 C.F.R. § 416.935(a)). In such cases, a secondary analysis must be conducted to determine whether the claimant's drug addiction or alcoholism is material to the initial finding of disability. See 20 C.F.R. § 404.1535(a). A "key factor" under the secondary analysis is whether the claimant would still be found disabled if they stopped using drugs or alcohol. Samantha W. v. Saul, No. 1:19-CV-398 (CFH), 2020 WL 4001160, at *2 (N.D.N.Y. July 15, 2020) (citing 20 C.F.R. § 404.1535(b)(1)). In making this determination, the administrative adjudicators first determine whether physical and mental limitations would remain if the claimant stopped using drugs or alcohol, and if so, whether those remaining limitations are disabling on their own. 20 C.F.R. § 404.1535(b)(2). If so, claimants are considered disabled within the meaning of the Social Security Act notwithstanding their drug addiction or alcoholism. Id. § 404.1535(b)(2)(ii). If not, their drug addiction or alcoholism is considered material, and the claimant is not eligible for benefits. Id. § 404.1535(b)(2)(i).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date of November 10, 2013. (R. at 300.) At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease; carpal tunnel syndrome; obesity; PTSD; depression; anxiety; and drug and alcohol abuse. (R. at 301.) The ALJ then found that Plaintiff's impairments, including substance use disorders, meet listings 12.04, 12.06, and 12.09 of 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Id.)

12. At step three, the ALJ found that if Plaintiff stopped the substance abuse, he would not have an impairment or combination of impairments that meets or medically

5

equals any of the impairments in 20.C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d) and 416.920(c)). (R. at 303.)

13.     Next, the ALJ found that, if Plaintiff stopped substance use, he would have the residual functional capacity ("RFC") to perform light work,

> except: frequent handling objects, that is gross manipulation, with both hands; frequent fingering, that is fine manipulation, with both hands; occasional exposure to moving mechanical parts; occasional operating a motor vehicle; occasional exposure to unprotected heights; occasional climb ramps or stairs; occasional climb ladders, ropes, or scaffolds; occasional balance, stoop, crouch, kneel, crawl; able to perform routine and repetitive tasks; able to work in a low stress job, with a low stress job defined as having only occasional decision making required and only occasional changes in the work environment; no interaction with the public; and only occasional interaction with co-workers and supervisors.

(R. at 305.)

14.     At step four, the ALJ found that, if Plaintiff stopped substance use, he would be unable to perform any past relevant work. (R. at 313.) At step five, the ALJ found that, if Plaintiff stopped substance use, there would be a significant number of jobs in the national economy that Plaintiff could perform. (R. at 314.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 315.)

15.     Plaintiff argues that the ALJ's final determination is not supported by substantial evidence because the ALJ failed to consider the opinion of Physician's Assistant Monica Fellenz, and because the ALJ relied on stale evidence in evaluating Plaintiff's physical and mental impairments.

6

16. Plaintiff first argues that the ALJ erred in failing to consider the opinion of PA Fellenz. Defendant argues that any error is harmless because incorporating the lifting restriction imposed by Ms. Fellenz would not lead to a different result.

17. "It is well-settled that 'the medical opinion of a [plaintiff's] treating [source] is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence.'" Hatcher v. Astrue, 802 F.Supp.2d 472, 476 (W.D.N.Y.2011) (quoting Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000) (alteration added)). However, only "acceptable" treating sources are entitled to this presumption of controlling weight. See SSR 96–2p. Although an opinion from an "other" source may be considered "with respect to [a plaintiff's] impairment and ability to work," such opinions do not demand the same deference as those of a treating physician. Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008) (citing Mongeur v. Heckler, 722 F.2d 1033, 1039 n. 2 (2d Cir.1 983) ("the diagnosis of a nurse practitioner should not be given the extra weight accorded a treating physician"). Nevertheless, an ALJ may consider evidence from other sources when "determining severity of impairments and how they affect [a plaintiff's] ability to function." Griffin v. Colvin, No. 7:12-CV-976 GLS/ESH, 2014 WL 296854, at *7 (N.D.N.Y. Jan. 27, 2014). The degree of weight to be given such evidence is determined by applying certain generic factors: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) evidence supporting the opinion; (4) how consistent the opinion is with the record as a whole; (5) specialization in contrast to the condition being treated; and (6) other significant factors. Id.

18. Generally, the harmless error rule applies in social security cases, and courts have held that ALJ error which does not negate the validity of the ALJ's ultimate conclusion is harmless and thus does not warrant reversal. Wiggins v. Berryhill, No. 17-CV-1073, 2019 WL 1856259, at *6 (W.D.N.Y. Apr. 25, 2019). See also Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (finding harmless error where the ALJ's consideration of a doctor's report would not have changed the ALJ's adverse determination). In other words: "where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration." Fitzgerald v. Astrue, No. CIV.A. 2:08-CV-170, 2009 WL 4571762, at *8 (D. Vt. Nov. 30, 2009) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987)).

19. On January 12, 2017, physician's assistant Monica Fellenz filled out a Cattaraugus County disability form. (R. at 810.) She noted Plaintiff's diagnoses of cervical disc disorder with radiculopathy, chronic lumbar pain, depression/PTSD, and ETOH (alcoholism), and considered these permanent. (Id.) She opined that Plaintiff could do no lifting over 10 pounds, and no repetitive bending. (Id.)

20. The ALJ did not discuss Ms. Fellenz's opinion in assessing the opinion evidence. Instead, the ALJ mentioned only the opinion of consultative examiner Dr. Rita Figueroa, who examined Plaintiff on March 31, 2016. Dr. Figueroa opined that Plaintiff may have a mild limitation in repetitive bending, lifting, and carrying, and moderate limitation in prolonged walking and standing, with mild limitation to fine motor skills. The ALJ gave this opinion great weight, finding it consistent with Plaintiff's only sporadic treatment for his physical issues, and with medical evidence showing that Plaintiff was able to ride an ATV and move a washer during the period at issue. (R. at 313.)

21. This Court does not find error in the ALJ's failure to specifically discuss Ms. Fellenz's opinion. Even if the ALJ had incorporated the restrictions Ms. Fellenz imposed, the evidence supports a finding of not disabled. As to Fellenz's restriction on "repetitive bending," Plaintiff argues that the RFC fails to make any limitations on bending (Docket No. 12-1 at p. 15), while Defendant argues that the ALJ's limiting of Plaintiff to "occasional" stooping and crouching accounts for this limitation. (Docket No. 16-1 at p. 16.) The regulations define stooping and crouching as the main types of bending, and define occasional as from very little to up to one third of the time. SSR 83-14 ("… [t]o perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally (from very little up to one-third of the time, depending on the particular job)"). Plaintiff's RFC of light work with occasional crouching or stooping would not require repetitive bending, and would therefore comply with Ms. Fellenz's restriction.

22. This Court also finds harmless error in the ALJ's failure to discuss the lifting restriction in Ms. Fellenz's opinion. At the hearing, Vocational Expert Atkinson testified that jobs would exist at both the "light" and "sedentary" exertional level for claimants with Plaintiff's non-exertional limitations. (R. at 350-51.) In sedentary work, a claimant is limited to lifting of objects up to 10 pounds. 20 C.F.R. § 404.1567(a). Thus, even if it was error for the ALJ not to discuss Ms. Fellenz's opinion that Plaintiff could not lift more than 10 pounds, and even if this limitation had led to a RFC of sedentary work, the finding of disability would remain the same because the VE testified that jobs would exist in the national economy. It was therefore harmless error, at worst, for the ALJ not to consider Ms. Fellenz's opinion.

23.     Plaintiff next argues that the ALJ erred by relying on the "stale" opinions of Drs. Figueroa and Santarpia, making its RFC determination unsupported by substantial evidence. Defendant argues that neither opinion is stale because the evidence does not show that Plaintiff's physical or mental condition "deteriorated" after these opinions were written.

24.     A medical opinion is stale when it is "rendered before some significant development in the claimant's medical history." Clark v. Comm'r of Soc. Sec., No. 18-CV-0509-MJR, 2019 WL 3886723, at *3 (W.D.N.Y. Aug. 19, 2019). For a medical opinion to be stale, not only must there be a significant period of time between the date of the opinion and the hearing date, there also must be subsequent treatment notes "indicat[ing] a claimant's condition has deteriorated" over that period. Vazquez v. Saul, No. 18-CV-242, 2019 WL 3859031, at *3 (W.D.N.Y. Aug. 16, 2019) (citing Whitehurst v. Berryhill, No. 1:16-CV-01005-MAT, 2018 WL 3868721, at *4, *5 (W.D.N.Y. Aug. 14, 2018)). Medical opinions that are "stale and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." Camille v. Colvin, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015), aff'd 652 F. App'x 25 (2d Cir. 2016).

25.     On March 31, 2016, Dr. Rita Figueroa performed a consultative medical evaluation. (R. at 680-84.) Dr. Figueroa diagnosed Plaintiff with cervicalgia, lumbago, history of right wrist fracture, history of right leg fracture, morbid obesity, hypertension, and pre-diabetes. (R. at 683-84.) She observed that Plaintiff had difficulty with opposing fingers on his left hand. (R. at 683.) Dr. Figueroa opined that Plaintiff may have a mild limitation to repetitive bending, lifting, carrying, and fine motor skills, and a moderate limitation to prolonged walking and standing. (R. at 684.)

26. After this evaluation, Plaintiff underwent carpal tunnel release surgery in his right hand on August 25, 2016. (R. at 812). An examination of his left hand (noted decreased sensation in his left hand and he restarted Gabapentin (R. at 80-84.) Plaintiff discontinued physical therapy for his hand after one session (R. 309, 815).

27. Plaintiff continued to complain of back pain, including at a physical therapy intake appointment on September 2, 2016, but did not return for physical therapy after this appointment. (R. at 315, 309.) At an appointment with Dr. Corinne Krist on January 24, 2017, he mentioned that he had hurt his back while moving a washing machine—an activity the ALJ considered inconsistent with disabling back pain. (R. at 914.) Dr. Krist also noted that Plaintiff had not followed up with physical therapy following his wrist surgery. (R. at 916.) Imaging of Plaintiff's back showed herniated disc and mild degenerative spondylosis at L4-5 (R. at 685, 1050-51.) Plaintiff mentioned his back pain was getting worse on November 15, 2017, but the examining doctor noted that he was "not taking anything for this." (R. at 80.) Plaintiff presented as in no acute distress at multiple appointments after Dr. Figueroa's opinion. (R. at 706, 744, 762, 777, 796, 800, 917, 1027, 1300, 1306, 1323.)

28. On March 31, 2016, Dr. Susan Santarpia performed a consultative psychiatric evaluation. (R. at 686-89.) At this time, Plaintiff was living in a level 2 group home and had been sober for several months. (R. at 686.) Dr. Santarpia observed a euthymic mood, full range affect, and fair insight and judgment. (R. at 688.) She opined that Plaintiff was able to follow and understand simple directions and instructions, relate adequately with others, and appropriately deal with stress, but that he was impaired in his ability to perform complex tasks independently. (Id.)

29. In the months after this evaluation, Plaintiff resumed alcohol use. On March 7, 2018, Plaintiff attempted suicide after a hospital stay for detox. (R. at 1290, 1282, 1263.) Plaintiff had been drinking when he attempted suicide. (R. at 1314.) Plaintiff continued to report suicidal thoughts on March 19, 2018. (R. at 1311.)

30. Plaintiff argues that the evidence from after his consultative examinations—his continuing carpal tunnel and back symptoms and his suicide attempt—demonstrates that both Dr. Figueroa's and Dr. Santarpia's opinions are stale. But the record does not reveal a "deterioration" in Plaintiff's physical or mental condition.

31. After the carpal tunnel release, Plaintiff did not receive further treatment for carpal tunnel syndrome. He had decreased left hand sensation below his left thumb and index finger on November 15, 2017, but this symptom was not mentioned on February 15, 2018, when Plaintiff received an injection for right elbow pain. (R. at 83, 99-101.) Similarly, although Plaintiff complained of back problems after Dr. Figueroa's examination, the record does not show him attending physical therapy or seeking additional treatment for this issue. The record does not demonstrate a significant change in Plaintiff's hands or back after Dr. Figueroa's examination.

32. As to Plaintiff's mental condition, this Court finds convincing Defendant's argument that his suicide attempt actually supports the ALJ's interpretation of Dr. Santarpia's opinion. Dr. Santarpia's opinion was made when Plaintiff was sober, and reveals only mild impairments; the ALJ gave it weight insofar as it showed how Plaintiff functioned when not using substances. (R. at 313). Plaintiff's suicide attempt, on the other hand, took place during a period of intense alcohol consumption and thus confirms ALJ's determination that substance use was material to Plaintiff's disability. The record does

not so much show a deterioration after Dr. Santarpia's examination, as it does the stark difference in Plaintiff's function with and without substance use. The regulations mandate that a claimant is only disabled if his disability would remain in the absence of substance use. 20 C.F.R. § 404.1535(b)(2)(ii). The ALJ did not err in comparing Dr. Santarpia's opinion with Plaintiff's later suicide attempt while using alcohol.

33. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination. The decision contains an adequate discussion of the medical evidence supporting the ALJ's determination that Plaintiff was not disabled, and Plaintiff's aforementioned contentions are unavailing. Plaintiff's Motion for Judgment on the Pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 16) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:   February 11, 2021
         Buffalo, New York

                                             s/William M. Skretny
                                             WILLIAM M. SKRETNY
                                             United States District Judge